IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROL M. KAM, | § | |
|  Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0378-G-BK |
| | § | |
| DALLAS COUNTY, et al., | § | |
|  Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b), *State of Texas' Motion to Dismiss*, Doc. 24, and *Dallas County's Motion to Dismiss*, Doc. 29, have been referred to the undersigned for a recommended disposition. For the reasons stated herein, Dallas County's motion should be **GRANTED IN PART**, resulting in the dismissal of all of Plaintiff's claims, and the State of Texas' motion should be **DENIED AS MOOT**.

**I. BACKGROUND**

Plaintiff Carol Kam brings this *pro se* action against the State of Texas and Dallas County (the "County") (collectively "Defendants") arising from the probate litigation that ensued after the deaths of her brother, Robert Kam, and father, Charles Kam (the "Probate Proceedings").[1]

**A. Litigation Regarding Robert Kam's Estate**

Plaintiff alleges that in February 2011, after being diagnosed with pancreatic cancer, Robert created a trust for his estate, over which Plaintiff's brother, David Kam, was named trustee (the "Original Trust"). Doc. 3 at 6, 37. Under the terms of the Original Trust, Plaintiff

---

[1] For clarity, the Court refers to individuals with the surname "Kam" by their first name.

was to receive a $10,000.00 inheritance. Doc. 3 at 7. Plaintiff further alleges that in March 2011, Robert's girlfriend, with the aid of her attorney, David Pyke ("Attorney Pyke"), made changes to the Original Trust that were approved by David and Robert (the "Amended Trust"). Doc. 3 at 8-9. When it was discovered that the provision providing for Plaintiff's inheritance had been removed, Attorney Pyke drafted an amendment restoring Plaintiff's inheritance, which was subsequently signed by Robert (the "Second Amendment"). Doc. 3 at 10-11. However, following Robert's death, David refused to distribute to Plaintiff the sum she inherited. Doc. 3 at 11.

Consequently, Plaintiff and her nephew, Justin Kam, who was also dissatisfied with his inheritance under the Amended Trust, filed a will contest in Dallas Probate Court No. 3, seeking to void the Amended Trust and uphold the Original Trust (the "First Will Contest"). Doc. 3 at 11. The case was assigned to Judge Michael Miller and subsequently transferred to Judge John Peyton for trial in July 2013, during which Robert's testamentary capacity at the time he executed the Amended Trust was contested. Doc. 3 at 11-13. Judge Peyton found, *inter alia*, that (1) Plaintiff and Justin failed to meet their burden of proof on all counts, (2) the Original Trust was unenforceable, and (3) the contest was maintained in bad faith and without probable cause. Doc. 3 at 48-49. Thus, pursuant to the Amended Trust's "no contest" provision, Judge Peyton found that Plaintiff and Justin revoked all benefits to which they would have been entitled under the terms of the Amended Trust and Second Amendment. Doc. 3 at 49. Judge Peyton also ordered Plaintiff and Justin to pay attorneys' fees and litigation expenses totaling $226,242.88. Doc. 3 at 49-51. Judge Peyton's ruling was affirmed on rehearing and in November 2015, Judge Margaret Jones Johnson denied Plaintiff's bill of review.[2] Doc. 3 at 14-

---

[2] Justin did not join in Plaintiff's appeal. Doc. 3 at 15, 43.

2

16. The Fifth Court of Appeals affirmed Judge Johnson's denial. Doc. 3 at 16; *see In re Estate of Kam*, No. 05-16-00126-CV, 2016 WL 7473905 (Tex. App.—Dallas 2016, pet. denied). Finally, in March 2017, the Supreme Court of Texas denied Plaintiff's petition for review. Doc. 3 at 16.

**B.     Litigation Regarding Charles Kam's Estate**

Plaintiff alleges that in April 2012, during the pendency of the First Will Contest, Charles amended his will to remove David as an heir. Doc. 3 at 18. After Charles died in August 2012, Plaintiff filed the amended will for probate. Doc. 3 at 18-19. Thereafter, David, represented by Attorney Pyke, contested the will (the "Second Will Contest"). Doc. 3 at 19. Plaintiff alleges that David did so "to destroy the entire amount of the Estate" through costly litigation. Doc. 3 at 20. In September 2013, trial was held in Dallas Probate Court No. 2 before Judge Chris Wilmouth, who denied Plaintiff's application for probate. Doc. 3 at 20-21. In February 2016, the Eighth Court of Appeals reversed Judge Wilmouth's ruling, admitted Charles' amended will to probate, and awarded Plaintiff costs of the appeal. Doc. 3 at 21-22; *see Matter of Kam*, 484 S.W.3d 642 (Tex. App.—El Paso 2016, pet. denied).

**C.     The Instant Lawsuit**

In February 2018, Plaintiff filed this lawsuit in which she asserts violations of her Fourteenth Amendment right to due process because the state judges and justices involved in the Probate Proceedings allegedly denied her the right to a fair trial. Specifically, Plaintiff challenges the validity of the judgment entered in the First Will Contest, arguing: (1) Robert lacked testamentary capacity to execute the Amended Trust, Doc. 3 at 24-27; (2) Attorney Pyke relied on forged evidence at trial, Doc. 3 at 28-29; (3) Judge Peyton lacked authority to preside over the trial, Doc. 3 at 30-33; and (4) Judge Peyton improperly denied Plaintiff the right to

question a witness during the rehearing, Doc. 3 at 34-36.  Plaintiff also contends she is entitled to the $10,000.00 she inherited from Robert, and that Judge Peyton's order that she pay over $200,000.00 in litigation expenses and court costs is a baseless and "malicious penalty."  Doc. 3 at 37-42.  As relief, Plaintiff requests that: (1) Defendants grant her "a Fair Trial, with a Jury, so [she] may have the opportunity to have the Malicious Judgment removed," (2) she "receive [her] assigned inheritance," and (3) she be fully reimbursed for all legal expenses and court costs incurred to date.  Doc. 3 at 46.

The County and State filed motions to dismiss Plaintiff's Original Complaint on March 24, 2018 and April 6, 2018, respectively.  Doc. 24; Doc. 29.  Plaintiff responded to each.  Doc. 30; Doc. 31.  Only the County filed a reply.[3]  Doc. 32.

In its motion to dismiss, the County argues, *inter alia*, that the *Rooker-Feldman* doctrine[4] divests this Court of jurisdiction to hear Plaintiff's claims.  Doc. 29 at 8-10.  Upon review, the County's argument is well-founded and entirely disposes of Plaintiff's claims.  As such, the Court need not reach the other arguments raised by the County or the State of Texas' motions to dismiss.

## II. APPLICABLE LAW

A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure if it lacks the statutory or constitutional power to adjudicate

---

[3] Plaintiff filed without leave a "Second Response" to the County's reply, which the Court construes as an improperly filed sur-reply.  Doc. 33; *see* N.D. TEX. L. CIV. R. 56.7 (stating that sur-replies may not be filed unless the Court has granted leave to do so).  Because Plaintiff did not seek or obtain leave to file her sur-reply, the Court will not consider it.

[4] The doctrine takes its name from two Supreme Court decisions: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923).

the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). As the Court of Appeals for the Fifth Circuit has succinctly stated:

> The Supreme Court has definitively established, in what has become known as the *Rooker-Feldman* doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court."

*Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Additionally, the *Rooker-Feldman* "jurisdictional bar is not limited to actions in federal court that explicitly seek review of a state court decision, but also extends to those 'in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief.'" *Jordaan v. Hall*, 275 F. Supp. 2d 778, 788 (N.D. Tex. 2003) (Fish, C.J.) (quoting *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986)). Claims are inextricably intertwined with a state court's judgment when "the District Court is in essence being called upon to review the state court decision." *Feldman*, 460 U.S. at 482 n.16.

### III. ANALYSIS

Plaintiff's claims stem from the actions of the judges and justices involved in the Probate Proceedings and, though cast as constitutional claims, amount to nothing more than a collateral attack on the judgments entered in the Probate Proceedings, in particular the First Will Contest. *See Jordaan*, 275 F. Supp. 2d at 788-89 (when a federal action "is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court [judgment] and other related orders," lower federal courts lack subject matter jurisdiction over such action). Plaintiff's insistence that *Rooker-Feldman* does not apply because she is "not asking to relitigate [sic] [her] Case" is

unavailing. Doc. 31 at 13. As mentioned above, *Rooker-Feldman* not only bars explicit efforts to review state court rulings, but also claims that are inextricably intertwined with those rulings. *Jordaan*, 275 F. Supp. 2d at 788. In the instant case, Plaintiff's federal constitutional claims are premised on accusations of impropriety on the part of the judges and justices involved in the Probate Proceedings, and are thus inextricably intertwined with those judgments. *See Turner v. Cade*, 354 F. App'x 108, 110-11 (5th Cir. 2009) (per curiam) (holding that plaintiff's claims premised on the allegation that a state court judge conspired and colluded with defendants to deprive her of her constitutional, civil, and property rights were inextricably intertwined with the state court judgment she complained of); *Phinizy v. State of Ala.*, 847 F.2d 282, 284 (5th Cir. 1988) (plaintiff's claim that the probate court's conduct denied her due process was "obviously" inextricably intertwined with the probate court's judgment in the state proceeding).

Such intertwining is made all the more apparent by the relief that Plaintiff seeks in this case, to-wit: (1) a retrial of the First Will Contest to remove the "malicious judgment" entered against her; (2) her $10,000.00 inheritance; and (3) reimbursement of all litigation expenses incurred thus far. Doc. 3 at 46. To grant this relief, the Court would have to reverse the judgment entered in the First Will Contest. *See Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334, 336 (5th Cir. 2011) (per curiam) (finding plaintiff's claims were inextricably intertwined with state court judgment where reversal of the state court judgment would be a necessary part of the relief requested in the federal action); *see also Wallace v. Hernandez*, No. A-14-CV-691-LY, 2015 WL 1020720, at *2 (W.D. Tex. Mar. 9, 2015) (finding plaintiffs' claims were barred by *Rooker-Feldman* where the "essential relief" they sought was reversal of probate court's rulings against them), *adopted by* 2015 WL 12751504 (W.D. Tex. Apr. 9, 2015), *aff'd* 631 F. App'x 257 (5th Cir. 2016) (per curiam). Consequently, Plaintiff's only recourse is application for writ of

certiorari to the United States Supreme Court. *Weekly*, 204 F.3d at 615. As such, *Rooker-Feldman* divests this Court of subject-matter jurisdiction and Plaintiff's claims should be dismissed without prejudice.

### IV. LEAVE TO AMEND

Ordinarily, a *pro se* litigant should be granted leave to amend her complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam). However, leave need not be granted if the court determines that the plaintiff has already pleaded her best case or if the proposed amendment would be futile. *Id.*; *Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 872-73 (5th Cir. 2000). While Court has not previously granted Plaintiff leave to amend, she has nonetheless done so. On May 14, 2018, after briefing on the motions to dismiss was complete, Plaintiff filed an Amended Complaint adding Judge Peyton as a defendant.[5] *See* Doc. 34. *See* Doc. 34. The claims that Plaintiff asserts therein are essentially identical to the claims she asserted in her Original Complaint and predicated on the same factual allegations, namely, her challenge to the validity of the First Will Content and the resulting judgment entered by Judge Peyton. *See* Doc. 34 at 1-10. Thus, for the reasons explained above, the amended claims also are inextricably intertwined with a prior state court judgment and accordingly barred by *Rooker-Feldman*. *Jordaan*, 275 F. Supp. 2d at 788. In light of the futility of Plaintiff's proposed amendments, the Court concludes that she has simply pleaded her best case and any

---

[5] Because Defendants' motions to dismiss were filed more than 21 days before Plaintiff filed her Amended Complaint, Plaintiff lacked authority to amend her complaint without Defendants' consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Plaintiff obtained neither. Even if the Court liberally construes Plaintiff's Amended Complaint as a motion for leave to amend, *see e.g.*, Jacuzzi, Inc. v. Franklin Elec. Co., Inc., No. 3:07-CV-1090-D, 2008 WL 2185209, at *4 (N.D .Tex. May 27, 2008) (Fitzwater, C.J.), it has no merit for the reasons discussed *infra* – the Court lacks jurisdiction to hear all the claims pled therein. *See* Union Planters Nat'l Leasing, Inc. v. Woods, 687 F.2d 117, 121 (5th Cir. 1982) (instructing courts to consider, *inter alia*, "futility of amendment" when deciding whether to grant leave to amend).

additional grant of leave to amend would cause needless delay. *Brewster*, 587 F.3d at 767-68; *Stripling*, 234 F.3d at 872-73.

## V. CONCLUSION

For the foregoing reasons, *Dallas County's Motion to Dismiss*, Doc. 29, should be **GRANTED IN PART** and Plaintiff's claims **DISMISSED WITHOUT PREJUDICE.** Because no other claims will remain, *State of Texas' Motion to Dismiss*, Doc. 24, should be **DENIED AS MOOT**.

**SO RECOMMENDED** on May 29, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). Any objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE